UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

GARY GIBBS,                          )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )          Case No. 1:23-cv-00006-SNLJ
                                     )
CITY OF SIKESTON, et al.,            )
                                     )
            Defendants.              )

## MEMORANDUM AND ORDER

Plaintiff Gary Gibbs, proceeding *pro se*, filed this lawsuit alleging he was subjected to tortious and unconstitutional conduct by emergency responders who entered his residence without his consent in response to a 911 call. [Doc. 1]. In the Third Amended Complaint, he brings claims under 42 U.S.C. § 1983 and state law against 28 defendants. [Doc. 81]. This matter is now before the Court on the defendants' motions to dismiss. [Docs. 85, 94]. For the reasons stated below, the motions are granted.

## I.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a case if the complaint fails to state a claim. When considering a Rule 12(b)(6) motion, the court assumes the plaintiff's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (cleaned up). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (cleaned up).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Although *pro se* complaints must be liberally construed, they still must contain sufficient facts to support the claims advanced, and the court will not assume facts that are not alleged. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (cleaned up). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79.

## II.  BACKGROUND

The following is a summary of Gibbs's account of the events, including both the factual allegations and the conclusory statements alleged in the Third Amended Complaint.  [Doc. 81].  However, as stated above, when determining whether the

2

allegations in the Third Amended Complaint are sufficient to state a claim, the Court

accepts as true only the well-pleaded facts.  *Iqbal*, 556 U.S. at 678.

 On the morning of January 8, 2021, Gibbs lit a fire in his fireplace and then began

a Zoom meeting with his employer.  [Doc. 81 at ¶ 62].  About an hour later, someone

came to his door and told him that his chimney was smoking.  [*Id.* at ¶ 63]. Gibbs

extinguished the fire with a water hose.  [*Id.* at ¶ 64].  A few minutes later, Officer Kim

Scott arrived in response to a 911 call reporting a possible fire at Gibbs's residence.  [*Id.*

at ¶¶ 61, 66, 75].  Gibbs told Scott that the fire had been extinguished and that the fire

department did not need to respond.  [*Id.* at ¶¶ 66, 68, 69].  Scott said the fire department

was en route and denied Gibbs access to his residence.  [*Id.* at ¶¶ 67, 71, 72, 73, 74, 76,

77].  Gibbs repeatedly asked Scott to leave his property, but Scott refused to do so.  [*Id.* at

¶¶ 76, 79].

Shannon Keller, along with "firefighters, police officers, and detectives," arrived

and entered Gibbs's residence without his consent or a warrant.  [*Id.* at ¶¶ 81, 83, 162].

The "firefighters, police officers, and detectives" were not wearing protective gear nor

carrying fire suppression equipment.  [*Id.* at ¶¶ 82, 86, 99].  Keller entered and exited the

residence multiple times.  [*Id.* at ¶ 88].  Gibbs asked Keller what the "firefighters, police

officers, and detectives" were doing in his residence, and Keller stated they were looking

for the attic entry.  [*Id.* at ¶ 90].  Gibbs pointed out the attic entry.  [*Id.* at ¶ 91].

While Gibbs was speaking with Keller, "from a glance inside the house, [he]

observed several firefighters, police officers, and detectives standing throughout,

conspiring."  [*Id.* at ¶ 95, 102].  He overheard them discussing that, even though there

3

was no fire, they were getting paid and could use the situation as a training exercise.  [*Id.* at ¶ 97].  Keller was standing beside him and could also "hear the firefighters, police officers, and detectives plotting."  [*Id.* at ¶ 102].  He then took an aggressive stance, creating a physical barrier to prevent Gibbs from entering his residence.  [*Id.* at ¶ 103].  Keller then forcefully grabbed Gibbs's right shoulder and pushed him away from the residence, causing a shoulder injury.  [*Id.* at ¶ 104].  Gibbs demanded that Keller and the officers leave his property, but his demand was ignored.  [*Id.* at ¶¶ 105, 106].  Keller's conduct was "intentionally aimed at causing harm to [Gibbs] and obstructing him from witnessing or overhearing the actions and conversations of the firefighters, police officers, and detectives inside the house."  [*Id.* at ¶ 109].

Gibbs picked up a water hose, mimicking the act of spraying water onto the chimney to demonstrate what the firefighters should be doing.  [*Id.* at ¶ 111].  Scott rushed toward Gibbs, reaching for his utility belt, which forced Gibbs to retreat from his property and prevented him from protecting it.  [*Id.* at ¶ 112].  No flames were coming from the chimney, yet firefighters remained on the property.  [*Id.* at ¶ 113].  The firefighters appeared to be preparing to ignite a fire instead of addressing the smoke.  [*Id.*].

Gibbs approached Officer Jerence Dial, who was speaking on a CB radio, "coordinating actions related to the event."  [*Id.* at ¶¶ 114-115].  Dial requested additional assistance from Scott County Rural FPD, even though there was no visible fire.  [*Id.* at ¶ 115].  Gibbs questioned whether more firefighters were needed, noting there were no flames and expressing concern that they were "trying to burn down [his] house right in

4

front of [his] face." [*Id.* at ¶ 116]. Gibbs again asked the emergency responders to leave his property. [*Id.*]. Dial responded, "let them do their job," and walked away. [*Id.* at ¶ 116, 118].

After a second fire truck arrived, firefighters entered the residence with several chainsaws and took part in the "conspiracy to bring devastation to [Gibbs's] property to gain training experience." [*Id.* at ¶¶ 119, 120]. "The Fire Chiefs coordinated, conspired, and summoned over 38 employees" to engage in the tortious conduct. [*Id.* at ¶¶ 121, 122]. The emergency responders "did not follow standard procedure and prolonged any necessary steps to protect [Gibbs's] property." [*Id.* at ¶ 123]. The defendants' actions were corrupt, and they failed to fulfill the basic duty of firefighters to provide fire protection,  prevent damage, and preserve personal property. [*Id.*].

Gibbs observed officers "conspiring" and repeatedly demanded an explanation for the large presence of police officers and firefighters, despite there being no visible fire. [*Id.* at ¶ 124]. He watched as Firetruck 1 extended its ladder, and a firefighter climbed to the roof to cut into it with a chainsaw. [*Id.* at ¶ 125]. Gibbs yelled to Dial, "What are your people doing? You're going to burn down my house. If you cut a hole in the roof, you'll let in air that will fuel a fire." [*Id.* at ¶ 126]. Dial crossed the street to a neighbor's property to distance himself from Gibbs. [*Id.* at ¶ 127]. Shortly after the firefighters cut holes in the roof, flames appeared at the base of the chimney outside the residence. [*Id.*]. Flames could also be seen through the hole cut in the roof. [*Id.* at ¶ 131]. The firefighters stood by and did nothing to suppress the fire. [*Id.* at ¶¶ 131, 133-140]. They only started efforts to extinguish the fire after the electric and gas companies confirmed it

was safe.  [*Id.* at ¶ 135-139].

Approximately 25 minutes after all emergency vehicles arrived and 10 minutes after flames appeared, "the team" began spraying water.  [*Id.* at ¶ 141].  After the fire was extinguished, "a second crew" climbed onto the roof and cut a 10-by-20-foot opening to access the attic.  [*Id.* at ¶¶ 143-144].  "Several firefighters" entered the attic and continued cutting into the interior structure.  [*Id.* at ¶ 146].

The fire chief eventually cleared the residence and allowed Gibbs to enter.  [*Id.* at ¶ 147].  There was more than eight inches of water standing inside the residence.  [*Id.* at ¶¶ 150-151].  Gibbs observed two defendants using chainsaws to cut inside the residence, purportedly to ensure that the fire was extinguished.  [*Id.* at ¶ 154].  He concluded that the defendants were intentionally demolishing his residence for training purposes.  [*Id.* at ¶ 155].

Gibbs filed this lawsuit on January 9, 2023.  [Doc. 1].  In the Third Amended Complaint, he asserts claims under 42 U.S.C. § 1983 and state law in five counts against 28 defendants.  [Doc. 81].  In Count I, he alleges that emergency responders trespassed on his property and caused property damage, violating both state law and the Fourth Amendment.  [*Id.* at 29-32].[1]  In Count II, he alleges that emergency responders conspired to violate his Fourth Amendment rights.  [*Id.* at 33-35].  In Count III, he alleges that emergency responders violated the Fifth Amendment Takings Clause and his Fourteenth Amendment Due Process rights by causing unnecessary and excessive

---

[1] Citations that do not include the ¶ designation are references to page numbers in the Third Amended Complaint.

6

property damage, rendering his residence uninhabitable. [*Id.* at 35-37]. In Count IV, he alleges a state law claim of negligent infliction of emotional distress. [*Id.* at 38-39]. In Count V, he alleges a municipal liability claim based on allegations that an official policy, unofficial custom, and inadequate training and supervision caused the alleged constitutional violations. [*Id.* at 39-42].

In response to the Third Amended Complaint, the City of Sikeston, the Sikeston Department of Public Safety (Sikeston DPS), and the 23 individual defendants (collectively referred to as the "Sikeston defendants"), along with the Scott County Rural Fire Protection District (Scott County Rural FPD), filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [Docs. 85, 94]. They also argue that Gibbs's claims are barred by sovereign immunity, official immunity, and the public duty defense. [Docs. 85, 86, 94, 95].

### III. PRELIMINARY DISMISSALS

#### A. Individual defendants

As a preliminary matter, the Third Amended Complaint violates the pleading requirements of the Federal Rules of Civil Procedure, *Iqbal*, and *Twombly*. The 217 numbered paragraphs include allegations that are conclusory, confusing, inconsistent, and repetitive. Simply put, the Third Amended Complaint does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," nor are the allegations "simple, concise, and direct." *See* Fed. R. Civ. P. 8(a)(1), 8(d)(1).

The essential function of a complaint "is to give the opposing party fair notice of the nature and basis or grounds for a claim." *Topchian v. JPMorgan Chase Bank, N.A.*,

760 F.3d 843, 848 (8th Cir. 2014).  In that regard, a plaintiff must specify each defendant's role so that each defendant is put on notice of what they are accused of doing.  *Id.*  "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Boggs v. Am. Optical Co.*, No. 4:14-cv-1434-CEJ, 2015 WL 300509, at *2 (E.D. Mo. Jan. 22, 2015).  This type of "shotgun" or "kitchen sink" pleading, "in which a plaintiff asserts every possible cause of action against a host of defendants . . . without facts specific enough that those defendants can respond to the allegations does not comport with even the most generous reading of Rule 8(a)."[2]  *Id.*

In addition to the notice requirement, a plaintiff bringing a § 1983 claim must allege that a defendant, through their own actions, violated the Constitution. *Iqbal*, 556 U.S. at 676. "Section 1983 does not sanction tort by association." *Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014) (cleaned up).  Instead, "[g]overnment officials are personally liable only for their own misconduct.  *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015).  It is not sufficient for a plaintiff to make broad allegations against a group of defendants, or to make allegations against one person and simply impute responsibility for those actions to others. *See Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003) (affirming dismissal of defendants who were named in the complaint but there were no allegations of their personal involvement in the alleged constitutional

---

[2] Such pleadings also unfairly burden the Court with the task of sifting through the morass of allegations to identify the material ones among countless rambling irrelevancies.

violations).  When multiple defendants are involved, the plaintiff must specify each defendant*'s* role in the alleged harm.  *See Majors v. Trout*, No. 1:24-cv-22 SNLJ, 2024 WL 2250374, at *5 (E.D. Mo. May 17, 2024) (finding plaintiff's broad sweeping allegations of constitutional violations against seventeen defendants failed to state a claim).  Each defendant*'s* conduct must be evaluated separately, and there must be "a causal link to, and direct responsibility for, the deprivation of rights."  *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990).

Here, the vast majority of the allegations are made against the "defendants" and the "firefighters, police officers, and detectives," thereby failing to provide notice of the grounds for the claims made against each individual defendant.  Additionally, the allegations fail to show personal responsibility for any of the asserted § 1983 claims against defendants Bobby Sullivan, Brant Mullin, John Nelson, Benjamin Quick, Dalton Hunsaker, Dustin Morse, Calder Odom, Matt Cotner, Ryan Troske, Evelyn Aceves, Dennis Irwin, Ryan Smith, Derick Wheetley, James Donner, Flint Dees, James McMullin, Jon Broom, Dylan Jenkins, James Whitley, and Ryan Rascher.  Aside from the section identifying the parties, these defendants are only mentioned by name in the following three paragraphs.

> Despite being asked to leave and being informed that there was no fire on the property, the Defendants [***] unlawfully entered the Plaintiff*'s* property.  They deployed emergency vehicles, fire trucks, and personnel, including firefighters, police officers, and detectives, who caused significant damage to the residence using fire, water, and chainsaws.  This resulted in extensive destruction across hundreds of square feet of the property.  [Doc. 81 at ¶ 17].

---

[***] Gibbs lists all 28 defendants by name.

9

The actions and methods used by the defendants *** were tantamount to arson. Their breach of duty resulted in extensive property damage, physical injury, emotional distress, and financial losses for the plaintiff. Additionally, the defendants' unlawful presence and tortious actions led to the plaintiff being assaulted and deprived of the use of their property. The plaintiff alleges that these constitutional violations were committed intentionally and that, due to the policies and customs of the Cities of Sikeston, Miner, and Blodgett, these municipalities are liable for the actions of defendants. [*Id.* at ¶ 21].

The plaintiff observed *** working together to supervise, order, and participate in causing extensive damage to his property. They excessively cut into the plaintiff's house, ignited a fire inside and claimed it was an attic fire, trespassed without a lawful warrant, and used the property as a training site. They denied the plaintiff access to his own property, assaulted him, and engaged in reckless, negligent, and grossly negligent actions that violated his rights. The defendants did not come to assess the reported smoke from the chimney, and when a blaze was ignited— tantamount to arson—they failed to protect the plaintiff's house. [*Id.* at ¶ 129].

Gibbs relies solely on the alleged presence of these individuals to support his claims, which is insufficient to state a plausible § 1983 claim against them.

Additionally, Gibbs does not identify any claims—under federal or state law— against those defendants. Instead, for the separate counts, he lists the defendants as "Kim Scott, Shannon Keller, Jerence Dial ***et al***., the City of Sikeston, City of Miner, City of Blodgett, Sikeston Department of Public Safety, and Scott County Rural Fire Protection District." [*Id.* at 29, 33, 35, 38] (emphasis added). He also uses the term "et al." in his prayer for relief in each count. [*Id.* at 32, 35, 37, 39]. The phrase "et al.," which means "and others," fails to provide notice of the identity of the defendants subject to that claim beyond those specifically named. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 318 (1988).

For these reasons, the Third Amended Complaint fails to state a claim against

defendants Bobby Sullivan, Brant Mullin, John Nelson, Benjamin Quick, Dalton Hunsaker, Dustin Morse, Calder Odom, Matt Cotner, Ryan Troske, Evelyn Aceves, Dennis Irwin, Ryan Smith, Derick Wheetley, James Donner, Flint Dees, James McMullin, Jon Broom, Dylan Jenkins, James Whitley, and Ryan Rascher, and as a result, they will be dismissed.

**B. Sikeston DPS and Scott County Rural FPD**

The § 1983 claims against Sikeston DPS and Scott County Rural FPD will be dismissed because they are not subject to suit under § 1983. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (holding that departments and subdivisions of local government are not suable entities under § 1983); *Owens v. Scott Cnty. Jail*, 328 F.3d 1026 (8th Cir. 2003) (affirming the dismissal of the Scott County Jail because it is not a legal entity subject to suit under § 1983); *Vonneedo v. Dennis*, No. 1:18cv34 HEA, 2018 WL 2095702, at *2 (E.D. Mo. May 7, 2018) ("Plaintiff's claims against the Sikeston Department of Public Safety will be dismissed because the Sikeston Department of Public Safety, as a department or subdivision of City government, is not an entity subject to a lawsuit under federal law."). Even if those entities were subject to suit under § 1983, the Third Amended Complaint is devoid of non-conclusory allegations that would state a plausible *Monell* claim against them. *See* discussion below in Section IV.A.1.

## IV.  DISCUSSION

### A.  42 U.S.C. § 1983 claims

The Court will first address the § 1983 claims because they establish the basis for

jurisdiction in this Court.  The defendants remaining for the § 1983 claims are the City of Sikeston, Kim Scott, Shannon Keller, and Jerence Dial.  Counts I, II, III, and IV are alleged against all defendants, and Count V is alleged against the City of Sikeston.

"[T]o state a claim for relief under § 1983, a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (cleaned up).

To the extent the defendants seek to invoke state law immunities as a basis for dismissing Gibbs's claims under § 1983, those doctrines do not apply.  There is no immunity available to local governments sued under § 1983.  *Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) (holding that municipalities are not immune from claims under § 1983); *Fernandez v. St. Louis Cnty., Missouri*, 538 F. Supp. 3d 888, 904 (E.D. Mo. 2021) (holding that sovereign immunity under state law does not apply to claims under § 1983).  Likewise, official immunity and the public duty doctrine available under state law do not apply to § 1983 claims.  *Valenzuela v. Osterman*, No. 3:24-cv-05075-MDH, 2025 WL 903839, at *3 (W.D. Mo. Mar. 25, 2025) (citing *Howlett v. Rose*, 496 U.S. 356, 376 (1990) (holding that immunities available under state law do not apply to § 1983 claims).

### 1. *Municipal Liability (Count V)*[3]

In Count V, Gibbs asserts a municipal liability claim against the City of Sikeston.

---

[3] The Court finds it more efficient to resolve the municipal liability claim before addressing the other § 1983 claims.

A municipality can only be held liable for a constitutional violation caused by (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). Gibbs attempts to assert a *Monell* claim under all three.

As discussed *infra*, Gibbs has not sufficiently pled a deprivation of a constitutional right in Counts I, II, III, and IV and, therefore, his municipal liability claim fails on this ground alone. *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016) ("In order for municipal liability to attach, individual liability first must be found on an underlying substantive claim."). Even if Gibbs had sufficiently pled a deprivation of a constitutional right, he fails to allege **facts** to support a municipal liability claim.

Gibbs alleges the following in support of his municipal liability claim:

[P]laintiff seeks relief due to the longstanding practices of the City of Sikeston, City of Miner, City of Blodgett, and associated public safety departments, which systematically allow inadequate training, supervision, and reckless disregard for citizens' constitutional rights. These practices include the improper enforcement of ordinances and state laws by firefighters, police officers, and detectives leading to repeated trespass, and negligent torts against both property and person. [*Id.* at ¶ 3].

The Cities of Sikeston, Miner, and Blodgett have established practices, policies, or customs of improperly training, supervising, and disciplining their firefighters, police officers, and detectives. These shortcomings enable employees to enforce ordinances and state laws without regard for citizens' constitutional rights, resulting in trespass and both intentional and negligent harm to individuals and property. Additionally, these cities permit their employees to act with reckless disregard and neglect. The plaintiff alleges that these constitutional violations stem from the established policies and customs of Sikeston, Miner, and Blodgett, making these cities liable for their employees' conduct and for the violations committed by the defendants. [*Id.* at ¶ 7].

Plaintiff asserts claims for municipal liability against the City of Sikeston, City of

13

Blodget [sic], and City of Miner under 42 U.S.C. § 1983, based on their policies, practices, or customs that resulted in constitutional violations and injury to the Plaintiff. Municipalities are liable under § 1983 when an official policy, practice, or custom causes a deprivation of constitutional rights. [*Id.* at ¶ 207].

Plaintiff asserts that due to the inadequate training and supervision of emergency response personnel, as demonstrated by the reckless disregard of property and procedural requirements on January 8, 2021, these municipalities' practices and customs led to the violations of his constitutional rights and property damage. [*Id.* at ¶ 208].

The City of Sikeston, City of Blodget [sic], and City of Miner maintained a policy, practice, or custom of inadequate hiring, training, supervision, and discipline of their public safety personnel, including police officers and firefighters. These cities failed to ensure that their personnel followed constitutional standards in interactions with citizens and during emergency responses. The municipal failures were the driving force behind the violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights, including unauthorized entry, unreasonable seizure of property, and deprivation of property without due process. [*Id.* at ¶ 211].

The Cities' failure to establish, implement, and enforce policies and training to prevent unconstitutional conduct demonstrates a deliberate indifference to the rights of citizens, including Plaintiff. Despite prior incidents and repeated complaints of substandard practices, the cities neglected to remedy these issues, thereby enabling or encouraging misconduct and reckless conduct by their employees. [*Id.* at ¶ 212].

The policies, practices, or customs of the City of Sikeston, City of Blodget [sic], and City of Miner was the moving force behind the harm Plaintiff suffered. The deliberate indifference in hiring, training, and supervising employees allowed for the reckless and negligent actions that caused Plaintiff's physical injury, emotional distress, and property damage. These cities' actions and inactions directly led to the constitutional violations Plaintiff experienced. [*Id.* at ¶ 214].

The Cities failed to adequately train and supervise employees, including police officers, firefighters, and public safety officials, on respecting citizens' constitutional rights. This failure contributed to the unauthorized entry onto Plaintiff's property, the excessive and unnecessary damage caused, and the mental and physical harm inflicted on Plaintiff. The lack of sufficient training and supervision shows a pattern of neglect and disregard for citizens' safety and

14

property rights.  [*Id.* at ¶ 215].

Municipal policies, or lack thereof, allowed Defendants to use Plaintiff's residence as a "training site," as evidenced by their failure to use proper firefighting or inspection procedures, leading to excessive property destruction and rendering Plaintiff's property uninhabitable per City of Sikeston ordinance …. [*Id.* at ¶ 216].

To assert a *Monell* official policy claim, Gibbs must allege facts showing a deprivation of his constitutional rights caused by an official policy of the City of Sikeston.  *Ball-Bey v. Chandler*, 415 F. Supp. 3d 884, 893 (E.D. Mo. 2019).  Gibbs has not identified any policy of the City of Sikeston that he claims led to a violation of a constitutional right.  Therefore, his *Monell* official policy claim fails.

To state a *Monell* custom claim, Gibbs must allege facts that show:

a)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by a governmental entity's employees;

b)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

c)  That [he] was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (cleaned up).  "The pattern of unconstitutional conduct must be so pervasive and widespread so as to have the effect and force of law."  *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (cleaned up).  A pattern requires similarity and specificity of numerous prior incidents of the specific violation at issue.  *Ball-Bey*, 415 F. Supp. 3d at 895 (E.D. Mo. 2019) (citing *Peterson v. Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009)).

Gibbs does not cite any other incident of the alleged unconstitutional conduct at

15

issue to support a pattern of misconduct.  Instead, he relies on the alleged unconstitutional conduct on January 8, 2021, and conclusory allegations.  *See* [Doc. 81 at ¶¶ 3, 7, 207, 208, 211, 212, 214, 215, 216].  Although Gibbs attempts to use the proper legal terms for a custom claim, noticeably absent is any factual support for his conclusions.  Because Gibbs fails to allege facts to support the existence of a continuing, widespread, and persistent pattern of unconstitutional misconduct, his custom claim fails.

Gibbs's failure to train or supervise claim fares no better.  To state a failure to train claim, Gibbs must allege facts that show:

a)  the City of Sikeston's training practices were inadequate;

b)  the City of Sikeston was deliberately indifferent to the rights of others in adopting these training practices, and the failure to train was a result of deliberate and conscious choices it made; and

c)  the training deficiencies caused constitutional deprivation.

*Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013).  To plead deliberate indifference, a plaintiff must allege that the municipality "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." *Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005).  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011).  "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality . . . can a city be liable for such a failure under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

The failure to train claim fails for the same reason as the custom claim: Gibbs fails

16

to allege facts establishing a pattern of constitutional violations. *See Ulrich*, 715 F.3d at 1061 (affirming district court's dismissal of *Monell* failure to train or supervise claim where the plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of the plaintiff's rights). He also fails to provide any facts regarding deficiencies in the City of Sikeston's training program. Instead, he makes broad claims of a failure to adequately train or supervise the enforcement of ordinances and state laws, inadequate training on citizens' constitutional rights, and insufficient emergency response training, without alleging facts to support those claims. Such broad allegations are insufficient to state a claim. *See e.g.*, *Jiang v. Porter*, 156 F. Supp. 3d 996, 1009 (E.D. Mo. 2015). Without factual allegations that the City of Sikeston had notice that its training or supervision was inadequate prior to the events at issue, this claim fails. *See Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1216-1217 (8th Cir. 2013).

Furthermore, Gibbs does not specify any particular deficiencies in the training of Scott, Keller, or Dial. Without facts about what training Scott, Keller, and Dial did or did not receive, Gibbs fails to sufficiently plead that a failure to train or supervise caused any alleged constitutional violation. *Ball-Bey*, 415 F. Supp. 3d at 900. Instead, his claim relies on an assumption that if a constitutional violation occurs, it must have been caused by a failure to train or supervise.

Because the Third Amended Complaint is devoid of non-conclusory allegations that would establish a plausible claim of municipal liability against the City of Sikeston,

Count V will be dismissed.

### 2. Fourth Amendment (Count I)[4]

Under the Fourth Amendment, the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment applies in both civil and criminal contexts. *Soldal v. Cook Cnty.*, 506 U.S. 56, 66 (1992). A seizure of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobson*, 466 U.S. 109, 113 (1984). However, a seizure alone does not constitute a violation of the Fourth Amendment. "[I]n determining whether a government seizure violates the Fourth Amendment, the seizure must be examined for its overall reasonableness." *Samuels v. Meriwether*, 94 F.3d 1163, 1167 (8th Cir. 1996) (citing *Soldal*, 506 U.S. at 71). "An action is reasonable under the Fourth Amendment, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action." *United States v. Klump*, 536 F.3d 113, 118 (2d Cir. 2008) (cleaned up).

Gibbs's Fourth Amendment claim is based on (1) the responding agencies' presence on his property without his consent, (2) the alleged "intentional" act of igniting a fire in his residence, and (3) the alleged reckless and/or deliberate destruction of his property during fire suppression efforts. He initially argues that there was no reasonable

---

[4] Although Gibbs does not reference the Fourth Amendment in the heading for Count I, he alleges that "[d]efendants' actions … violated [his] Fourth Amendment rights." [Doc. 81 at ¶ 170].

18

justification for the emergency responders to enter his property due to the "vague nature of the 911 call." [Doc. 81 at ¶ 186]. Without question, the agencies and personnel responding to a 911 call about a house fire did not violate the Fourth Amendment by entering his property without his permission. A burning building creates an exigency that justifies warrantless entry. *Michigan v. Tyler*, 436 U.S. 499, 510 (1978). "Indeed, it would defy reason to suppose that firemen must secure a warrant or consent before entering a burning structure to put out the blaze." *Id.* Further, "[n]othing in the Fourth Amendment require[s] [firefighters] to wait until they [see] actual smoke or flames to enter a building that they reasonably believed might be on fire .... Nor is it relevant that no fire or smoke was found." *Klump*, 536 F.3d at 118.

Even if there was no "visible" fire when the first responders arrived after the 911 call, they had a duty to investigate for the public's safety. Furthermore, Gibbs admitted to starting a fire but claimed he had extinguished it. The first responders had reason to believe that a fire might still be present. Additionally, "an immediate threat that the blaze might rekindle presents an exigency that would justify a warrantless and nonconsensual post-fire investigation." *Michigan v. Clifford*, 464 U.S. 287, 293 n.4 (1984). The entry onto Gibbs's property and the subsequent fire investigation did not violate the Fourth Amendment.

Next, he complains about the emergency responders' ongoing presence on his property. "[O]fficials need no warrant to remain in a building for a reasonable time to investigate the cause of a blaze after it has been extinguished." *Tyler*, 436 U.S. at 510. "Fire officials are charged not only with extinguishing fires, but with finding their

19

causes." *Id.* "[D]etermining the cause and origin of a fire serves a compelling public interest, [therefore] the warrant requirement does not apply in such cases." *Clifford*, 464 U.S. at 293.

Regarding the claim that the defendants intentionally set a fire, it is unclear whether Gibbs is alleging that the defendants deliberately started the fire or that they exacerbated an existing one. The allegations on this issue are confusing and inconsistent.

Gibbs alleges there was no fire but also states that he picked up a water hose "mimicking the act of spraying water on the chimney to demonstrate what the firefighters should be doing." [Doc. 81 at ¶¶ 111, 113].

He alleges the firefighters were standing around not deploying their protective gear or charging their hoses, and they seemed to be preparing to ignite a fire instead of addressing the smoke. [*Id.* at ¶ 113].

He alleges he asked Dial whether the firefighters were following standard procedures for inspecting a smoking chimney. [*Id.* at ¶ 114].

He claims that although there were no signs of fire, the firefighters started cutting into the roof, to which he responded by yelling, "What are your people doing? You're going to burn down my house. If you cut a hole in the roof, you'll let in air that will fuel a fire. This won't help at all." *[Id.* at ¶¶ 125, 126].

He alleges that shortly after the firefighters cut into the roof, flames became visible at the base of the chimney outside the house. [*Id.* at ¶ 127]. But then he alleges the firefighters cut into the roof, ignited a fire inside, and claimed it was an attic fire. [*Id.* at ¶ 129].

He alleges there was extensive damage directly over the fireplace where firefighters fueled the fire by introducing air through their cuts in the roof and walls. [*Id.* at ¶ 152].

He alleges that the defendants engaged in reckless and excessive property damage by cutting multiple large holes in the roof and walls, causing flames to ignite and spread. [*Id.* at ¶ 165].

He alleges the defendants' actions "caused a fire." [*Id.* at ¶ 167].

He alleges that his expert concluded that the defendants' "lack of proper fire suppression procedures and reckless actions" "allowed flames to spread and worsen," [*Id.* at ¶ 171] and caused structural damage beyond what would be expected in a standard emergency response. [*Id.* at ¶ 196].

He alleges the defendants turned a minor incident into an extensive training exercise. [*Id.* at ¶ 180].

Moreover, there are no allegations that Scott, Keller, or Dial participated in and were directly responsible for intentionally setting a fire or destroying property during the fire suppression efforts. Although Keller entered the residence, there are no allegations that he entered the residence after Gibbs pointed out the attic entry, which occurred before the fire was allegedly intentionally ignited or exacerbated. There are also no allegations that Scott, Keller, or Dial were part of the crew that extinguished the fire. Further, they are each identified in the parties' section of Third Amended Complaint as "A Firefighter, Police Officer or Police Detective" and later Gibbs refers to Scott and Dial as officers, not firefighters. [Doc. 81 ¶¶ 37, 47, 59, 67, 112, 114]. The Third Amended Complaint fails to state a plausible Fourth Amendment violation against Scott, Keller, and Dial.

To the extent Gibbs asserts this claim against the City of Sikeston based on the alleged conduct of its employees, the claim fails. "[I]t is well established "that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson*, 709 F.3d at 1214. And, as discussed above, the Third Amended Complaint is devoid of non-conclusory allegations that would establish a plausible claim of municipal liability against the City of Sikeston.

For the reasons stated, the Fourth Amendment claim in Count I will be dismissed.

21

### 3. Conspiracy to Violate Fourth Amendment Rights (Count II)

To sufficiently plead a § 1983 conspiracy claim, the plaintiff must allege that "the defendant[s] conspired with others to deprive [plaintiff] of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff." *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). Additionally, the plaintiff must allege the deprivation of a constitutional right or privilege. *Id.* "Absent a constitutional violation, there is no actionable conspiracy claim." *In re Kemp*, 894 F.3d 900, 910 (8th Cir. 2018). Because the Fourth Amendment claim fails, the conspiracy claim fails as well. *See Kemp*, 894 F.3d at 910.

Furthermore, the allegations in the Third Amended Complaint are insufficient to state a claim under § 1983 for conspiracy. To survive a motion to dismiss, a § 1983 conspiracy claim "requires allegations of **specific facts** tending to show a *'meeting of the minds'* among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (emphasis added). "The plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Bonenberger v. St. Louis Metro. Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016) (internal citation omitted). Where the allegations are merely conclusory statements rather than specific facts, the complaint fails to state a claim. *Smithson v. Aldrich*, 235 F.3d 1058, 1063 (8th Cir. 2000); *see also Brimager v. City of Moscow Mills*, 706 F. Supp. 3d 838, 849 (E.D. Mo. 2023) (finding allegations that defendants "conspired together and amongst themselves and reached a mutual understanding" to deny the plaintiffs their constitutional

22

rights insufficient to state a conspiracy claim).

Here, Gibbs's allegations are simply conclusory and speculative allegations without any factual support. The allegations in Count II refer to the defendants collectively. [Doc. 81 at ¶¶ 175-182]. The incorporation of all preceding allegations does not cure that deficiency, as those allegations refer to "firefighters, police officers, and detectives" "conspiring" and "plotting." [*Id.* at ¶¶ 95, 102]. The only factual allegation—that Gibbs "overheard firefighters, police officers, and detectives discussing, that although there was no fire, they were being paid and could use the situation as a training exercise"—is not attributed to any particular defendant. [*Id.* at ¶ 97]. As for Keller, Gibbs alleges Keller was standing beside him at that time. [*Id.* at ¶ 102].

For the reasons stated, Gibbs fails to state a plausible conspiracy claim under § 1983 against Scott, Keller, and Dial. The claim against the City of Sikeston also fails because it cannot be held liable on a *respondeat superior* theory, and the Third Amended Complaint is devoid of non-conclusory allegations regarding the claim of municipal liability. Therefore, the conspiracy claim in Count II will be dismissed.

### 4. *Fifth Amendment Takings Claim (Count III)*

The Takings Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, prohibits **the government** from taking private property **for public use** without just compensation. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021); U.S. Const. amend. V. "If a local government takes private property without paying for it, that government has violated the Fifth Amendment … [a]nd the property owner may sue the government at that time in federal court for the deprivation of a right

secured by the Constitution" under § 1983. *Knick v. Township of Scott*, 588 U.S. 180, 189, 194 (2019) (cleaned up). "The wrongful taking, detention, or theft by an individual of the property of another is not a constitutional taking as that term has been defined by the Fifth Amendment and commonly understood by the courts." *Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984) (cleaned up). As a result, takings claims may only be brought against government entities. *See Glow In One Mini Golf, LLC v. Walz*, 37 F.4th 1365, 1375 (8th Cir. 2022) (noting that *"*Supreme Court cases only contemplate government entities—not individual government officials—providing just compensation.*"*).[5]

Here, there are no allegations of an official action or any other action **by the City of Sikeston** to seize Gibbs's property through direct or inverse condemnation **for public use**. Nor are there any allegations that an individual with final policymaking authority for the City of Sikeston directed a taking of Gibbs's property. *See  v. Atkinson*, 709 F.3d at 1215-1216. And again, the City of Sikeston cannot be held liable on a *respondeat superior* theory for the actions of its employees. Because the facts alleged in the Third

---

[5] *See also Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002) ("takings actions sound against governmental entities rather than individual state employees"); *Hinkle Family Fun Center, LLC v. Grisham*, No. 22-2028, 2022 WL 17972138, at *4 n. 2 (10th Cir. Dec. 28, 2022) (*"*We are not aware of any circuit court that has explicitly held that a takings action can be brought against a state official in an individual capacity.*"*); *Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*, 125 F. Supp.3d 1051, 1078-79 (D. Haw. 2015) (*"*individual capacity defendants are not liable for federal takings claims.*"*); *Herman v. Town of Cortlandt, Inc.*, No. 18-cv-2440 (CS), 2023 WL 6795373, at *4 (S.D.N.Y. Oct. 13, 2023) (holding a takings claim against an individual fails as a matter of law); *Simonds v. Boyer*, No. 21-cv-841, 2022 WL 11964613, at *4 (W.D. Pa. Oct. 20, 2022) (*"*a Fifth Amendment Takings claim cannot be brought against the Individual-Capacity Defendants in their personal capacities*"*); *Katsaros v. Serafino*, No. 00-cv-288, 2001 WL 789322, at *5 (D. Conn. Feb. 28, 2001) (*"*[o]nly governmental entities, and not individuals, can be liable for takings violations.*"*).

Amended Complaint do not constitute a taking by a local government and cannot be asserted against Scott, Keller, and Dial, the takings claim in Count III will be dismissed.

### 5. *Fourteenth Amendment Due Process Claim (Count III)*

The Fourteenth Amendment forbids a state entity to "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. Procedural due process safeguards against deprivations of property without sufficient process.  *Kemp*, 894 F.3d at 908.  To state a procedural due process claim under § 1983, a plaintiff must show that the state deprived him or her of some protected "life, liberty, or property" interest without sufficient process.  *Krentz v. Robertson*, 228 F.3d 897, 902 (2000).

To the extent Gibbs alleges a due process claim based on the actions of "defendants," particularly, Scott, Keller, and Dial, for restricting access to his residence and for the alleged "unauthorized occupation" of his property, the claim fails.  As discussed *supra* regarding the Fourth Amendment claim, the first responders lawfully entered and remained on the premises.

The claims concerning unauthorized actions, such as intentionally setting a fire and recklessly destroying property during suppression efforts, fail to state a due process claim.  As previously stated, there are no allegations that Scott, Keller, or Dial participated in and were directly responsible for intentionally setting the fire or destroying Gibbs's property during the fire suppression efforts.  Without allegations that they were personally responsible for depriving Gibbs of his property, the Third Amended

Complaint fails to state a plausible due process claim against them.

The due process claim against the City of Sikeston also fails. "When a deprivation of property is caused by a random and unauthorized act of a [city or county] employee, it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Reese v. Kennedy*, 865 F.2d 186, 187 (8th Cir. 1989) (cleaned up); *Metro Publishing Group., Inc. v. Murphy*, No. 4:15-cv-1886-CEJ, 2016 WL 629791, at *2 (E.D. Mo. Feb. 17, 2016) (finding that plaintiffs failed to state a due process claim based on the sheriff's deviation from the city's eviction policies). "The [city or county] can no more anticipate and control in advance the random and unauthorized intentional conduct of its employees than it can anticipate similar negligent conduct." *Zinermon v. Burch*, 494 U.S. 113, 130 (1990) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). Further, post-deprivation remedies available under state law satisfy due process requirements. *Reese*, 865 F.2d at 187.

For the reasons stated, the due process claim in Count III will be dismissed.

## B.  City of Miner

The City of Miner, although duly served, failed to file a responsive pleading, and a Motion for Clerk's Entry of Default was granted against it. [Docs. 70, 77]. For the reasons discussed above, the Third Amended Complaint also fails to state a § 1983 claim against the City of Miner. Therefore, the Court finds good cause to set aside the entry of default against the City of Miner pursuant to Federal Rule of Civil Procedure 55(c). *See, e.g., Streambend Properties III, LLC v. Sexton Lofts, LLC*, 297 F.R.D. 349 (D. Minn.), *aff'd* 587 F.App'x 350 (8th Cir. 2014) (setting aside entries of default where the court

26

found plaintiff's claims meritless against the appearing defendants and the same claims were made against the defaulting defendants).[6]  The § 1983 claims against the City of Miner will also be dismissed.

## C. State law claims – Counts I and IV

Without a viable federal claim, the Court declines to exercise supplemental jurisdiction over the state law claims.  *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction.").

## V. CONCLUSION

For the reasons stated, this case will be dismissed in its entirety.  The dismissal will be without prejudice because the Court did not consider the merits of the state law claims and will not preclude Gibbs's ability to bring those or other claims in state court with regard to the events at issue.

The Court will not give Gibbs another opportunity to amend *sua sponte*.  *See United States v. Mask of Ka-Nefer-Nefer*, 752 F.3d 737, 742 (8th Cir. 2014) ("[A] district court in granting a motion to dismiss is not obliged to invite a motion for leave to amend if plaintiff did not file one.").  This case has been pending for over two years, and Gibbs

---

[6] *See also Tunstall v. Perry*, No. 1:15cv226, 2018 WL 1320265, at *4 (M.D.N.C. Jan. 5, 2018), report and recommendation adopted, No. 1:15cv226, 2018 WL 1311532 (M.D.N.C. Mar. 13, 2018), aff'd, 735 F. App'x 75 (4th Cir. 2018) (setting aside entry of default because plaintiff failed to state a valid claim against the defaulting defendant); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 385–86 (7th Cir. 2008) and *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1267 (11th Cir. 2003) (recognizing authority of court to *sua sponte* set aside an entry of default).

has had ample time and opportunities to plead his claims.  The claims in the Third Amended Complaint do not fail due to inartful pleading.[7]  Instead, they fail because Gibbs relies on conclusory statements without factual support and broad allegations against the defendants collectively. Although a *pro se* complaint must be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys, it must contain sufficient facts to support the claims asserted.  Here, the factual allegations do not support a reasonable inference that any particular defendant is liable for the misconduct alleged.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Bobby Sullivan, Brant Mullin, John Nelson, Benjamin Quick, Dalton Hunsaker, Dustin Morse, Calder Odom, Matt Cotner, Ryan Troske, Evelyn Aceves, Dennis Irwin, Ryan Smith, Derick Wheetley, James Donner, Flint Dees, James McMullin, Jon Broom, Dylan Jenkins, James Whitley, and Ryan Rascher defendants Bobby Sullivan, Brant Mullin, John Nelson, Benjamin Quick, Dalton Hunsaker, Dustin Morse, Calder Odom, Matt Cotner, Ryan Troske, Evelyn Aceves, Dennis Irwin, Ryan Smith, Derick Wheetley, James Donner, Flint Dees, James McMullin, Jon Broom, Dylan Jenkins, James Whitley, and Ryan Rascher are **DISMISSED** for failure to state a claim.

---

[7] Gibbs is not the average *pro se* litigant.  He is an educated individual who has spent more than 23 years teaching math and science.  [Doc. 81 at ¶¶ 27-30].  Additionally, he is familiar with pleading requirements in federal court from a prior case he filed. *Gibbs v. City of New Madrid*, 1:15-cv-00088 RLW, 2018 WL 1811903 (E.D. Mo. Apr. 17, 2018).  Pleading insufficiencies on municipal liability and takings claim were addressed by Judge White in that case. *Id.* at *4-6.

**IT IS FURTHER ORDERED** that the § 1983 claims against the Sikeston Department of Public Safety and the Scott County Rural Fire Protection District are **DISMISSED** because they are not subject to suit under § 1983.

**IT IS FURTHER ORDERED** that the motions to dismiss [Docs. 85, 94] are **GRANTED** as to the § 1983 claims in Counts I, II, III, and V for failure to state a claim, and those claims are **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk's Entry of Default against the City of Miner [Doc. 77] is **SET ASIDE** for good cause, and the § 1983 claims against it are **DISMISSED.**

**IT IS FURTHER ORDERED** that because there is no viable claim to establish jurisdiction in this Court, the Court **DECLINES** to exercise supplemental jurisdiction over the state law claims, and those claims are **DISMISSED.**

**IT IS FURTHER ORDERED** that this matter is **DISMISSED** without prejudice in its entirety and the Clerk of Court is directed to **CLOSE** the case and **TERMINATE** all remaining motions.  A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FINALLY ORDERED** that an appeal from this Order would not be taken in good faith.

**SO ORDERED** this 25th day of July, 2025.

_____

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE